**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| Carrie Ann Bell, | |
|---|---|
| Plaintiff | No.3:17-cv-01793 |
| v. | (Judge Richard P. Conaboy) |
| Nancy A. Berryhill,<br>Acting Commissioner of<br>Social Security, | |
| Defendant | |

---

**MEMORANDUM**

**1.  Procedural Background.**

We consider here Plaintiff's appeal from an adverse

decision of the Social Security Administration ("SSA") on her

applications for Disability Insurance Benefits ("DIB") and

Supplemental Security Income ("SSI"). This case was initially

filed in 2012 and most recently was back before the SSA after

being remanded by this Court in July of 2016. After remand,

Plaintiff received a new hearing before an ALJ on May 25, 2017.

The ALJ issued a written a decision dated August 2, 2017, which,

once again, denied Plaintiff's claims. This Court has

jurisdiction over this matter pursuant to 42 U.S.C. § 405(g).

**II. Testimony before the ALJ.**

A hearing was conducted before ALJ Randy Riley on May 25,

2017 in Harrisburg, Pennsylvania. Plaintiff Carrie Ann Bell

testified on her own behalf and Michael Kibble, a vocational expert ("VE"), testified as to the availability of employment in hypothetical situations proposed by the ALJ. Also present was Plaintiff's attorney whose identity was not placed in the record.

Plaintiff testified that she and her two children had lived with her mother since some unspecified date in 2013. Her mother was about to turn fifty-four years of age on the date of the hearing. Plaintiff went back to work briefly in 2015 despite the fact that neither her physical nor mental condition had improved. (R. 553-554). In order to obtain the job a friend helped her to complete the application. She needed assistance because she did not understand some of the questions. (R. 555).

Plaintiff did not know anyone who worked for the employer for whom she worked in 2015. She did not have difficulty understanding the employer's directions about how to do the job. She worked for three months and then stopped because her back pain was getting worse. Her daughter is autistic and required more care as well, but the primary reason she quit the job was constant back pain. (R. 555-56). The job in question was part-time but she still needed to call off or go home early four or five times during the three months she worked there. She does not believe that she could have performed the job (a hotel maid) if it had been on a full-time basis. (R. 557). Bending down to

make beds and clean the bathrooms was particularly difficult for her. She was under constant supervision and was told that she was too slow at doing the rooms. She was also told that she was forgetting to do things such as supplying cups or setting alarm clocks. She had difficulty working at the pace her supervisor preferred. She was often directed to work at a speed she found difficult to maintain. (R. 557-58).

Since she left part-time employment as a hotel maid in 2013 her primary physical problems have been back pain and instability in her right shoulder. She takes unspecified pain medications for these conditions but denies side effects. (R. 559). She also has problems with her memory. She forgets things like paying for her children's lunch tickets. She is also reluctant to go anywhere by herself and is always accompanied by one of her daughters, her mother, or a friend. She is afraid that someone may hurt her and recounted an episode in which she was alone and had an angry encounter with another motorist. When she goes to the store she is never sure whether she has received the correct change. Her mother helps her manage her bills. (R. 560-63).

The VE testified that he was familiar with the SSA's categories of work and with the Dictionary of Occupational Titles. He stated that he was also familiar with the Plaintiff's work history. He indicated that Plaintiff's past relevant work

had been classified as light though medium as performed by the Plaintiff (housekeeper-cleaner) and medium though heavy as performed by the Plaintiff (store laborer). R. 564-65).

The ALJ asked the VE to assume a person of the Plaintiff's age, education, and work experience with additional limitations to light work; occasional use of stairs; occasional balancing, stooping, kneeling, crouching, and crawling; never use of ladders; no exposure to irritants; work limited to routine, repetitive tasks; and a work environment that does not involve fast-paced production quotas or frequent workplace changes. Based on those assumptions, the VE stated that the Plaintiff would not be able to perform any of her past relevant work. However, given those limitations, light work would be available within the hypothetical claimant's capacities as a bindery machine feeder and a bakery racker. Also, sedentary work would be available as a table worker. (R. 565-66).

When the ALJ altered the previous hypothetical question to include an additional limitation such that the hypothetical claimant would also need to alternate between sitting and standing every fifteen minutes, the VE stated that such a person could not perform as a bindery machine feeder or bakery racker, but would be able to perform the sedentary job of table worker. The VE added that two other sedentary jobs - - small products

assembler and conveyer line bakery worker would also be within the hypothetical claimant's capacities. When the ALJ altered the hypothetical question once again to further assume that the hypothetical claimant would be unable to consistently perform sustained work activity over a forty hour week, the VE responded that the addition of such a limitation would render the hypothetical person (and hence the claimant) unemployable. (R. 566).

Plaintiff's counsel then questioned the VE whether the sedentary jobs she had described required more than occasional supervision. The VE replied that they involved occasional supervision "on the lower end of occasional". The VE was then asked whether the need for a supervisor to correct an employee's performance in some small way on a daily basis would affect the ability of the employee to stay employed. The VE responded that if the small corrections were made in response to some error that was resulting in a faulty product the person would be unemployable as requiring too much supervisory attention. (R. 567-568).

## III. Medical Evidence.

### A. Pinnacle Health.

Plaintiff's primary health care provider from April of 2011 to at least September of 2014 was Pinnacle Health in Middletown, Pennsylvania. Dr. William Albright provided the bulk of her

care. Dr. Joseph W. Lohr and Nurse Practitioner Linda Ulrich
also provided medical services to Plaintiff during this period.
Throughout Plaintiff's involvement with Pinnacle Health,
progress notes indicate diagnoses of low back pain, migraine
headaches, and fibromyalgia. Plaintiff's treatment at Pinnacle
Health consisted of prescription pain medications, several
trigger point injections, and physical therapy. An office note
of October 11, 2012 suggests that x-rays and an MRI produced no
answer regarding the etiology of Plaintiff's back pain and that
the advisability of seeing a pain psychologist was discussed.[1]
While the office notes from Pinnacle Health bear out the fact
that Plaintiff complained continuously of back pain throughout
the relevant period, the progress notes typically describe her
distress level as "mild" or "moderate" and, on some occasions,
as "no apparent distress".

     Nurse Practitioner Lisa Ulrich executed a Residual
Functional Capacity Questionnaire with respect to Plaintiff on
July 27, 2012 (R. 388-89). Ms. Ulrich opined that Plaintiff
suffered from migraines, low back pain and fibromyalgia. Ms.
Ulrich indicated the Plaintiff's symptoms would "seldom"
interfere with her ability to perform simple work-related tasks;

---

[1] An MRI performed on November 17, 2011 indicated that Plaintiff's vertebral body heights
were preserved and demonstrated no significant degenerative changes. The MRI did demonstrate
"mild posterior central disc protrusion at L5-S1".

that Plaintiff could walk one-half block without rest or significant pain; that Plaintiff could sit for thirty minutes at a time and stand-walk for fifteen minutes at a time; that Plaintiff could sit for up to three hours in an eight hour work day and stand/walk for up to three hours in an eight hour work day; that Plaintiff required a job which would permit her to shift positions at will; that Plaintiff would need to take unscheduled breaks of twenty to thirty minutes every two hours while at work; that Plaintiff could frequently lift up to ten pounds and occasionally lift up to twenty pounds; that Plaintiff had no limitation with respect to grasping, turning, or twisting objects or with fine manipulation; that Plaintiff would miss three to four work days each month; that Plaintiff was not a malinger; and that Plaintiff was incapable of sustained full-time employment.

On December 10, 2012, Dr. Albright completed a Residual Functional Capacity Questionnaire concerning Plaintiff. His findings largely mirrored those of Nurse Practitioner Ulrich five months earlier. Dr. Albright did place even more restrictions on Plaintiff's ability to sit, stand/walk, and lift. He also found that Plaintiff's ability to perform repetitive reaching, handling, or fingering was significantly limited. He stated that he could not say whether Plaintiff was a

malingerer but, like Ms. Ulrich, he concluded that Plaintiff was incapable of full-time employment.

**B. Dr. Bruce Goodman.**

On March 24, 2010, Dr. Goodman evaluated Plaintiff at the request of the Bureau of Disability Determination. Dr. Goodman did not have the benefit of Plaintiff's medical records and he relied on Plaintiff's recitation of her medical history. Plaintiff told Dr. Goodman that she was looking for work but had been unable to find a job that she could tolerate. Dr. Goodman stated that Plaintiff also told him that she had two children age two and six and that she was capable of cooking, cleaning, grocery shopping, driving, and child care. She walked with a normal gait, could heel/toe walk easily, exhibited no muscle spasm, exhibited negative straight leg raising in the supine position, and displayed no muscular atrophy or weakness. Dr. Goodman assessed that Plaintiff could stand/walk and sit without limitations; could frequently lift up to twenty pounds and had no limitation with respect to reaching, handling, fingering, or feeling.

**C. Dr. Joseph Agliotta.**

Dr. Agliotta, a psychologist evaluated Plaintiff's intellectual functioning on March 31, 2010 at the request of the Bureau of Disability Determination. He administered the Wechsler Adult Intelligent Test, reviewed Plaintiff's records, and

interviewed her. Dr. Agliotta found her to be oriented to person, place, and time with concrete thought processes. He found also that her mood was pleasant and her affect was full range. He assessed her verbal IQ at 66, performance IQ at 64, and full scale IQ at 63. These scores were indicative of mild mental retardation. He observed also that Plaintiff "would need assistance and oversight in managing any financial benefits." In terms of her ability to understand, remember, and carry out instructions, Dr. Agliotta found only slight to moderate impairment. Dr. Agliotta also assessed slight to moderate impairment in Plaintiff's ability to interact with the public, coworkers, and supervisors.

**IV. ALJ Decision.**

The ALJ's decision (Doc. 12-13 at 521-548) was unfavorable to the claimant. It includes the following findings of fact and conclusions of law.

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.

2. The claimant has not engaged in substantial gainful activity since December 31, 2005, the alleged onset date.

3. The claimant has the following severe impairments: mild mental retardation,

degenerative disc disease of the cervical and lumbar spine, fibromyalgia, pain disorder, bipolar disorder, and panic disorder.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Sub Part, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567 (d) and 414.967(d) except: occasionally climb stairs, balance, stoop, kneel, crouch, and crawl; never climb ladders, ropes, or scaffolds; must be allowed to alternate between sitting and standing every fifteen minutes as needed; avoid exposure to irritants; and work is limited to simple, routine, repetitive tasks in a work environment free from fast-pace production involving only simple work-related decisions with few, if any, work-place changes.

6. The claimant is unable to perform any past relevant work.

7. The claimant was born on February 15, 1982 and was twenty-three years old which is defined as a younger individual age 18-49, on the alleged disability onset date.

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability as defined in the Social Security Act, from December 31, 2005, through the date of this decision.

**V.    Disability Determination Process.**

The Commissioner is required to use a five-step analysis to determine whether a claimant is disabled.[2]  It is necessary for the Commissioner to ascertain: 1) whether the applicant is engaged in a substantial activity; 2) whether the applicant is severely impaired; 3) whether the impairment matches or is equal to the requirements of one of the listed impairments, whereby he qualifies for benefits without further inquiry; 4) whether the claimant can perform his past work; 5) whether the claimant's impairment together with his age, education, and past work experiences preclude him from doing any other sort of work.  20 CFR §§ 404.1520(b)-(g), 416.920(b)-(g); *see Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 888-89 (1990).

The disability determination involves shifting burdens of proof.  The initial burden rests with the claimant to demonstrate that he or she is unable to engage in his or her

---

[2]  "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).  The Act further provides that an individual is disabled

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

past relevant work.  If the claimant satisfies this burden, then the Commissioner must show that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform.  *Mason v. Shalala*, 993 F.2d 1058, 1064 (3d Cir. 1993).

As set out above, the instant decision was decided at the fifth step of the process when the ALJ found there are jobs that exist in the national economy that Plaintiff is able to perform. (R. at 541).

## VI.  Standard of Review.

This Court's review of the Commissioner's final decision is limited to determining whether there is substantial evidence to support the Commissioner's decision.  42 U.S.C. § 405(g); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence means "more than a mere scintilla".  It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).  The Third Circuit Court of Appeals further explained this standard in *Kent v. Schweiker*, 710 F.2d 110 (3d Cir. 1983).

> This oft-cited language is not . . . a
> talismanic or self-executing formula for
> adjudication; rather, our decisions make
> clear that determination of the existence
> *vel non* of substantial evidence is *not*

merely a quantitative exercise. A single
piece of evidence will not satisfy the
substantiality test if the Secretary
ignores, or fails to resolve, a conflict
created by countervailing evidence. Nor is
evidence substantial if it is overwhelmed
by other evidence--particularly certain
types of evidence (e.g., that offered by
treating physicians)--or if it really
constitutes not evidence but mere
conclusion. *See Cotter*, 642 F.2d at 706
("Substantial evidence" can only be
considered as supporting evidence in
relationship to all the other evidence in
the record.") (footnote omitted). The
search for substantial evidence is thus a
qualitative exercise without which our
review of social security disability cases
ceases to be merely deferential and becomes
instead a sham.

710 F.2d at 114.

This guidance makes clear it is necessary for the Secretary

to analyze all evidence. If she has not done so and has not

sufficiently explained the weight given to all probative

exhibits, "to say that [the] decision is supported by

substantial evidence approaches an abdication of the court's

duty to scrutinize the record as a whole to determine whether

the conclusions reached are rational." *Dobrowolsky v. Califano*,

606 F.2d 403, 406 (3d Cir. 1979). In *Cotter*, the Circuit Court

clarified that the ALJ must not only state the evidence

considered which supports the result but also indicate what

evidence was rejected: "Since it is apparent that the ALJ cannot

reject evidence for no reason or the wrong reason, an

explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter*, 642 F.2d at 706-07. However, the ALJ need not undertake an exhaustive discussion of all the evidence. *See*, *e.g.*, *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). "There is no requirement that the ALJ discuss in her opinion every tidbit of evidence included in the record." *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004). "[W]here [a reviewing court] can determine that there is substantial evidence supporting the Commissioner's decision, . . . the *Cotter* doctrine is not implicated." *Hernandez v. Commissioner of Social Security*, 89 Fed. Appx. 771, 774 (3d Cir. 2004) (not precedential).

A reviewing court may not set aside the Commissioner's final decision if it is supported by substantial evidence, even if the court would have reached different factual conclusions. *Hartranft*, 181 F.3d at 360 (*citing Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986); 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . ."). "However, even if the Secretary's factual findings are supported by substantial evidence, [a court] may review whether the Secretary, in making his findings, applied the correct legal standards to the facts presented." *Friedberg*

*v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983) (internal

quotation omitted).  Where the ALJ's decision is explained in

sufficient detail to allow meaningful judicial review and the

decision is supported by substantial evidence, a claimed error

may be deemed harmless.  *See*, *e.g.*, *Albury v. Commissioner of

Social Security*, 116 F. App'x 328, 330 (3d Cir. 2004) (not

precedential) (citing *Burnett v. Commissioner*, 220 F.3d 112 (3d

Cir. 2000) ("[O]ur primary concern has always been the ability to

conduct meaningful judicial review."). Finally, an ALJ's decision

can only be reviewed by a court based on the evidence that was

before the ALJ at the time he or she made his or her decision.

*Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001).

**VII. Discussion**

    **A. General Considerations**

    At the outset of our review of whether the ALJ has met the

substantial evidence standard regarding the matters at issue

here, we note the Third Circuit has repeatedly emphasized the

special nature of proceedings for disability benefits.  *See*

*Dobrowolsky*, 606 F.2d at 406.  Social Security proceedings are

not strictly adversarial, but rather the Social Security

Administration provides an applicant with assistance to prove

his claim.  *Id.*  "These proceedings are extremely important to

the claimants, who are in real need in most instances and who

claim not charity but that which is rightfully due as provided

for in Chapter 7, Subchapter II, of the Social Security Act."
*Hess v. Secretary of Health, Education and Welfare*, 497 F. 2d
837, 840 (3d Cir. 1974).  As such, the agency must take extra
care in developing an administrative record and in explicitly
weighing all evidence.  *Dobrowolsky*, 606 F.2d at 406.  Further,
the court in *Dobrowolsky* noted "the cases demonstrate that,
consistent with the legislative purpose, courts have mandated
that leniency be shown in establishing the claimant's disability,
and that the Secretary's responsibility to rebut it be strictly
construed."  *Id.*

**B. Plaintiff's Allegations of Error.**

**1. Whether the ALJ unreasonably determined that Plaintiff
failed to meet the criteria of Listing 12.05(B)?**

To substantiate a claim for DIB under a Listing, the
claimant must demonstrate that she meets all criteria of the
Listing. *Sullivan v. Zebley*, 493 U.S. 521,530(1990). Here,
claimant asserts that she meets the criteria of Listing 12.05B
which requires that she demonstrate:

> 1. Significantly sub average general
>    intellectual functioning evidenced by …
>    a full scale (or comparable) IQ score
>    of 70 or below on an individually
>    administered standardized test of
>    general intelligence; and

2. Significant defects in adaptive functioning

   currently manifested by extreme limitation

   of one, or marked limitation of two, of the

   following areas of mental functioning:

      (a)understand, remember, or apply

      instructions; or (b)interact with

      others; or (c) concentrate, persist,

      or maintain pace; or (d) adapt or

      manage oneself.

The record clearly documents that Plaintiff has significantly sub

average intellectual functioning via the Wechsler Adult

Intelligence Scale administered by Dr. Agliotta. (R. 293-295).

Thus, claimant has satisfied the first element of Listing 12.05B.

The Court is less sanguine that she satisfies the other necessary

criteria.

     There is no convincing evidence of record that Plaintiff has

an extreme limitation or even a marked limitation of any of the

four components of paragraph two of the Listing. Both Dr. Agliotta

and Dr. Suminski found that Plaintiff's limitations with regard to

understanding, remembering and applying instructions; interacting

with others; concentration, persistence and pace; and adaptation

were either mild or moderate.[3] Thus, the ALJ's conclusion that Plaintiff did not satisfy all criteria of the Listing is well supported by substantial evidence of record. Accordingly, Plaintiff's allegation of error on this point will be rejected.

**2. Whether the ALJ improperly evaluated the medical evidence regarding the effect of Plaintiff's fibromyalgia?**

Plaintiff claims that the ALJ failed to consider the debilitating effect of her fibromyalgia in determining her residual functional capacity. (R. 16-18). The ALJ did acknowledge that Plaintiff's fibromyalgia is a "severe impairment" at step 2 of the SSA's evaluative process. Despite that assessment and identification of other severe impairments including mild mental retardation, degenerative disc disease of the lumbar and cervical spine, pain disorder, panic disorder, and bipolar disorder, the ALJ found Plaintiff to be capable of light work with various additional limitations. (R. 533-534). A VE has confirmed that work exists in significant numbers in the national economy in occupations that accommodate the ALJ's assessment of Plaintiff's residual functional capacity. (R. 565-567).

The ALJ's residual functional capacity determination is in stark contrast to a Residual Functional Capacity Questionnaire

---

[3] Dr. Sumski noted: "The claimant is able to meet the basic mental demands of simple routine work on a sustained basis despite the limitations resulting from her impairment." (R. at 301).

submitted on December 10, 2012 by Dr. William J. Albright, Plaintiff's treating physician. (R. 449-450). Dr. Albright's assessment places severe limitations on Plaintiff and concludes unequivocally that Plaintiff is incapable of sustaining full-time employment. The ALJ relied instead on medical opinions provided by Dr. Bruce Goodman, a consulting, examining physician who evaluated Plaintiff at the request of the Bureau of Disability Determination in March of 2010, and Dr. Candelaria Legaspi, a state agency medical consultant who reviewed Plaintiff's medical records in April of 2012. (R. at 538). Both Dr. Goodman and Dr. Legaspi concluded that Plaintiff could perform work on a full-time basis at the light exertional level.

In the Third Circuit a treating physician's opinion is entitled to great deference and, where uncontradicted by other credible medical evidence of record, controlling weight. This is even more particularly so when, as in this case, the treating physician's opinion is based upon a continuing observation of a patient's condition over a prolonged period of time. Morales Apfel, 225 F3d 310 (3d Cir. 2000); See also 20  C.F.R. § 416.927(d)(2). Where competing medical opinions exist, the ALJ may choose whom to credit but "cannot reject evidence for no reason or for the wrong reason." *Plummer v. Apfel*, 186 F3d 422, 429 (3d Cir. 1999). The ALJ is required to provide "good reason" for rejecting

the medical opinion of a treating source. 20 C.F.R. §
404.1527(c)(2).

Before discussing the ALJ's rationale for subordinating Dr.
Albright's opinion to those of Drs. Goodman and Legaspi, the Court
must note that Dr. Goodman's opinion (R. 288-292) is temporally
remote having been rendered more than eight years ago. More
significantly, Dr. Goodman's opinion predates Plaintiff's
diagnosis of fibromyalgia which was first noted by Dr. Albright in
his office notes dated July 27, 2012. (R. at 422). Because of its
temporal remoteness and because Dr. Albright's numerous treatment
notes over a period of some forty-one months between April of 2011
and September of 2014 record the onset and continued
intractability of Plaintiff's fibromyalgia, Dr. Goodman's report
cannot reasonably be considered as accurate an assessment of
Plaintiff's limitations as that of Dr. Albright.

Dr. Legaspi's report is also suspect because it does not even
identify, much less discuss Plaintiff's indisputable diagnosis of
fibromyalgia as confirmed by the ALJ himself. Moreover, Dr.
Legaspi did not have the benefit of a long, longitudinal history
of treating the patient as did Dr. Alright. Thus, in the absence
of some palpable error or shortcoming in Dr. Albright's assessment
of Plaintiff's capacity for work, it is unreasonable to prefer the
assessment of Dr. Legaspi produced from cold records alone.

The ALJ's stated basis for rejecting Dr. Albright's opinion that Plaintiff is disabled is:

> There is also no explanation of the opinion on the form itself and Dr. Albright's treatment records, including examination from the day the form was completed, do not document significant objective examination findings or an underlying degree of disease supportive of the limitations suggested. Accordingly, this opinion is also found unsupported by the record and afforded little weight.

(R. at 439). The court must disagree with this analysis. There are no diagnostic tests for fibromyalgia. Fibromyalgia is a condition that is diagnosed primarily on subjective complaints and a "case involving a diagnosis of fibromyalgia presents a particular need for a close examination of the evidence due to the nature of the disease." *Watkins v. Colvin*, 2013 WL1909550 (M.D. Pa. May 8, 2013) (*Citing Henderson v. Astrue*, 887 F Supp. 2d 617, 636 (W.D.Pa. 2012). Thus, the ALJ's observation about a supposed lack of "significant objective examination findings" would hardly be surprising in a case involving fibromyalgia. "Fibromyalgia patients often manifest normal muscle strength and neurological reactions and have a full range of motion." *Rogers v. Commissioner of Social Security*, 486 F3d 234, 244 (6d Cir. 2007). Despite the

ALJ's assertion that Dr. Albright's progress notes contain no objective findings, the treatment notes do contain numerous references to fatigue; bilateral pain in the lower back, side, upper back, and neck; difficulty initiating sleep; nocturnal awakening; bilateral trigger areas; lumbar spine and right sacroiliac joint tenderness; and generalized muscular aches and pains. Each of these symptoms frequently occur in fibromyalgia patients. See www.mayoclinic.org/fibromyalgia. Moreover, Dr. Albright's course of treatment of the Plaintiff included pain alleviating medication, trigger point injections, and a referral of the Plaintiff to a pain management psychologist. These modes of treatment are those normally used in a fibromyalgia case. *Id*.

While the degree to which Plaintiff's symptoms impair her ability to work may still be open to some question, Plaintiff's subjective complaints as recorded over a period of years by Dr. Albright constitute strong evidence that, considered together with Plaintiff's other severe impairments of record, Plaintiff may have a more limited residual functional capacity than that determined by the ALJ or even be disabled. Thus, the Court must agree with Plaintiff's allegation of error on this point.

**VIII. Conclusion.**

For the reasons discussed above, this case will be remanded for further consideration of the degree to which Plaintiff's fibromyalgia compromises her ability to perform full-time

employment. The SSA must expand the record to more fully address this question and should consider soliciting a clarifying opinion from Dr. Albright and, perhaps, referring Plaintiff for examination by a rheumatologist.

**BY THE COURT**

**S/Richard P. Conaboy**
**Richard P. Conaboy**
**United States District Judge**

**Dated: June 7, 2018**

,